IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **MAS ASSOCIATES, LLC t/a** | * | |
| **EQUITY MORTGAGE** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Case No.: SAG-22-03195 |
| v. | * | |
| | * | |
| **KENNETH VENICK,** *et al.* | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

The complex procedural history of this case juggles between two parallel cases—one before this Court and one before the Circuit Court for Baltimore County. On December 8, 2021, Plaintiff MAS Associates, LLC t/a Equity Mortgage ("MAS"), a mortgage lender, brought an action in the Circuit Court for Baltimore County against its former vice president, Defendant Kenneth Venick and Venick's current employer, Apex Home Loans Inc. ("Apex"), alleging that Venick violated his non-compete, non-solicitation, and confidentiality agreements. *See* ECF 7-3. One year later, on December 12, 2022, MAS brought the present action before this Court against Venick and Apex, along with Apex's purchaser, Celebrity Home Loans, LLC ("Celebrity Home Loans")[1] and Apex's President, Eric D. Gates (collectively "Defendants"), again alleging a

---

[1] MAS also brought suit against Midwest Equity Mortgage, LLC, believing that this was a parent company of Celebrity Home Loans. *See* ECF 20 at 5. The record indicates that these two entities are the same. *See* ECF 32-1 (notice provided to the Maryland State Department of Assessments and Taxation of Midwest Equity Mortgage's name change to Celebrity Home Loans on May 14, 2020).

violation of Venick's non-compete, non-solicitation and confidentiality agreements. ECF 1. MAS subsequently amended its Complaint. ECF 20.

Before this Court, Venick filed a motion to dismiss and/or stay, or, in the alternative, motion for summary judgment. ECF 21. Defendants Apex, Celebrity Home Loans, and Gates filed a separate motion to dismiss. ECF 22. MAS opposed both motions. ECF 27; ECF 30. Defendants replied. ECF 31; ECF 32.[2] At the same time, dispositive motions were granted in the ongoing state litigation, resulting in additional briefing in this Court regarding *res judicata*. *See* ECF 32; ECF 33; ECF 34. Finally, this Court requested a joint status report regarding the ongoing proceedings and status of the related case in the Circuit Court for Baltimore County, ECF 37, to which the parties separately responded, ECF 38, ECF 39.

This Court has reviewed all of the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, Defendants' motions, ECF 21 and ECF 22, will be GRANTED and judgment will be entered in favor of Defendants.

**I.    BACKGROUND**

Plaintiff alleges that its former vice president, Venick, used his former client list at his new place of employment in violation of his non-compete, non-solicitation, and confidentiality agreements. In December, 2021, Plaintiff brought suit against Venick and Venick's current

---

[2] MAS argues that this Court should not consider the reply brief of Apex, Celebrity Home Loans, and Gates (ECF 32) because it was filed six days late. *See* ECF 34-1 at 2. Although Local Rule 105.2(a) requires that any reply memoranda must be filed within fourteen days after service of the opposition memoranda, it does not specify the consequence if that deadline is missed. "In its discretion, therefore, the court may hear an untimely opposition." *H & W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 252 (D. Md. 2000). "It does not further the interests of justice to automatically determine the issues of a lawsuit . . . because a deadline is missed." *Donovan v. Porter*, 584 F. Supp. 202, 208 (D. Md. 1984). Thus, given the relatively minimal tardiness and the lack of any resulting prejudice, this Court considers all of the parties' briefing.

employer, Apex, in the Circuit Court for Baltimore County. *See* ECF 7-3; *see generally MAS Associates, LLC, et. al. v. Venick, et. al.*, Case No. C-03-CV-21-004064. The parties proceeded with discovery and dispositive motions in that action. One year later, in December, 2022, Plaintiff filed a complaint in this Court against the same defendants, adding Apex's president and purchaser. ECF 1. While the parties filed briefings on dispositive motions in the federal court case, Judge Robert E. Cahill, Jr. of the Circuit Court for Baltimore County granted summary judgment in favor of Defendants Venick and Apex on March 7, 2023 in the state court case. ECF 32-2 [hereinafter "State Court Order"].

Presently, the parties dispute the effect of the state court proceedings on the federal court case. Defendants argue that *res judicata* principles resolve the present claims, or at minimum, abstention principles warrant dismissal or stay of the proceedings. In contrast, Plaintiff argues that its federal court claims exceed its state court claims, and therefore, dismissal is inappropriate. Thus, this Court reviews the history and scope of Plaintiff's respective claims.

   A. **State Court Litigation**

In its initial complaint in state court, Plaintiff alleged that Venick "abruptly left" MAS on October 29, 2021, and began working at its competitor, Apex, on November 1, 2021. Complaint at ¶¶ 10–11, *MAS Associates, LLC, et. al. v. Venick, et. al.*, Case No. C-03-CV-21-004064 [hereinafter "State Court Complaint"]; *see also* ECF 7-3 at 5–6. MAS further alleged that Venick sent out "a mass solicitation email to his former clients at MAS, notifying them that he had moved to Apex and enticing them to do business with Apex." *Id.* ¶ 12. MAS filed for breach of contract of a non-competition agreement (Count I), breach of contract of a non-solicitation agreement (Count II), breach of contract of the confidentiality provisions of MAS's operating agreement

(Count III), breach of fiduciary duty (Count IV), and tortious interference with business relations against Apex (Count V).

In his recent order, Judge Cahill describes the subsequent proceedings:[3]

> Procedurally, the parties litigated dismissal/summary judgment motions filed by Venick, which were denied by Judge Fader on February 4, 2022. A Scheduling Order was issued by this Court on March 28, 2022, which required that all discovery be completed by September 30, 2022. Venick sent MAS Interrogatories and a Request for Production of Documents on April 4, 2022. When responses were not filed, Venick made good-faith efforts to obtain answers before filing a Motion for Sanctions on August 15, 2022. Venick noted depositions of MAS witnesses on August 24, 2022. MAS simply refused to engage in discovery before the discovery deadline.
>
> On September 27, 2022, **three days before the discovery deadline**, MAS filed a Motion to Modify Scheduling Order, maintaining that, in the interests of "judicial economy" and because its purported damages claims "continue to accrue," it unilaterally decided to not provide any discovery to Venick despite Venick's timely and proper efforts to obtain it.
>
> Judge Ensor denied MAS's Motion to Modify Scheduling Order on October 25, 2022, noting in her ruling that MAS's suit was filed 10 months prior, and that MAS had furnished no discovery in the seven months subsequent to Venick's discovery requests. It must be noted that MAS's conduct in this litigation is inexcusable, at least with respect to discovery. It treated its obligations as to discovery cavalierly, and not in compliance with the spirit, the purpose or the terms of the Maryland Rules of Civil Procedure.
>
> Undeterred, and not finished with filing dilatory papers, MAS tried to appeal the denial of the motion seeking modification of the scheduling order as well as an order denying another of its motions, to strike Leslie D. Hershfield as the attorney for Vencik [sic]. The Appellate Court of Maryland granted Venick's Motion to Dismiss the appeal on December 27, 2022.

State Court Order at 2–4 (emphasis in original).

On March 7, 2023, with the parties' motions for summary judgment at last ripe for review, Judge Cahill turned to the merits of Venick and Apex's motions for summary judgment. In his

---

[3] "[W]hen entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000).

order, Judge Cahill found that MAS failed to provide any evidence that Venick directly or indirectly did business in any of the states prohibited by his non-competition agreement. *See* State Court Order at 5. Likewise, Judge Cahill concluded that "[t]here is no evidence or even a proffer concerning actual MAS clients or customers being 'solicited' or 'enticed' to move business from MAS to Apex," nor evidence of damages. *Id.* For these reasons, Judge Cahill granted summary judgment in favor of Venick on MAS's breach of contract claims (Counts I–III), and consequently concluded that there was "no viable claim" for breach of fiduciary duty (Count IV) or tortious interference of business relations by Apex (Count V). *Id.* at 6. Thus, Judge Cahill entered judgment in favor of Venick and Apex against MAS for all claims. *Id.* at 7. Presently, a trial date remains pending in state court for Venick's counterclaims. *See* ECF 39 at 2.

### B. Federal Court Litigation

Returning to December, 2022—shortly after the Circuit Court for Baltimore County denied MAS's attempts to amend the scheduling order, recuse the presiding judge, and strike opposing counsel from the case, *see* ECF 7-14, ECF 7-15, ECF 7-17—MAS filed a new complaint before this Court, *see* ECF 1, which it subsequently amended, ECF 20 [hereinafter "Federal Court Complaint"]. In its Federal Court Complaint, MAS alleges that Venick "abruptly left" MAS on October 29, 2021, and began working for a competitor on November 1, 2021. *Id.* ¶¶ 29–30. Shortly thereafter, Venick sent an "Equity Mortgages solicitation email to his former clients at Equity Mortgage, notifying them that he had moved to Apex and enticing them to do business with Apex." *Id.* ¶ 31. MAS asserts that Equity experienced an "immediate and significant decline in loan volume that is directly and solely attributable to Venick's continued use of Equity Mortgage's client list, Venick's ongoing attempts to poach Equity Mortgage customers, and the assistance Venick has received from Apex, Celebrity and Mid-West Equity." *Id.* ¶ 40.

Based on this alleged conduct, MAS filed claims for misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1831 *et seq.* (Count I); misappropriation of trade secrets in violation of the Maryland Uniform Trade Secrets Act, MD. CODE. ANN., COM. LAW §§ 11-1201, *et seq.* (Count II); common law misappropriation of trade secrets (Count III); civil conspiracy (Count IV); tortious interference with contractual relations (Count VII); tortious interference with prospective contracts (Count VIII); breach of the noncompetition agreement (Count IX); breach of the non-solicitation agreement (Count X); breach of contract of the confidentiality provisions of MAS's operating agreement (Count XI); breach of fiduciary duty (Count XII); knowing participation in breach of fiduciary duty (Count XIII); aiding and abetting breach of fiduciary duty (Count XIV); fraud (Count XV); conversion (Count XVI); and unjust enrichment (Count XVII).

In addition, MAS alleges that Venick "intentionally misused the Equity Mortgage mark throughout his entire tenure at Apex," pointing to (1) a November 8, 2022 screenshot of Venick's YouTube page, which retained the "Equity Mortgage Lending" logo on the banner; (2) November, 23, 2022 screenshots of his professional Facebook page, which retained posts from when he worked at Equity in 2019 and posted advertisements for Equity Mortgage; and (3) a November 3, 2021 screenshot of Venick's professional website, which retained the Equity Mortgage logo and font. *See* Federal Court Complaint ¶¶ 83–104. For this alleged misconduct, MAS filed claims of trademark infringement under 15 U.S.C. § 1114 (Count V) and trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A) (Count VI).

Finally, MAS alleges that when it inquired about what company Venick was leaving to go work for, Venick declined to voluntarily disclose his impending employment with Apex. *See* Federal Court Complaint ¶¶ 215, 219. MAS alleges that "[h]ad Venick revealed, while he was still

Case 1:22-cv-03195-SAG   Document 40   Filed 06/28/23   Page 7 of 14

employed by Equity Mortgage, that he was planning to go work for Apex, then Equity Mortgage would have taken immediate action to safeguard its confidential customer list from Venick and ensure that its trade secrets would not fall into the hands of a competitor." *Id.* ¶ 221. For this alleged misconduct, MAS filed a claim of intentional misrepresentation by concealment/non-disclosure (Count XVIII).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*,

550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Finally, federal courts reviewing a 12(b)(6) motion may take judicial notice of matters of public record, including court filings, and may consider documents incorporated into a complaint by reference without converting the motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

### III. DISCUSSION

Despite the lengthy list of claims filed by MAS, almost all of them relate to the same conduct already addressed and dismissed by the Circuit Court for Baltimore County, *i.e.*, Venick's work for a competitor and use of his client list while working at Apex. Following discovery and review of the evidence in the state court case, Judge Cahill found that there was no evidence "that Venick directly or indirectly did business in Maryland, Virginial, Delaware or Pennsylvania" and "no evidence or even a proffer concerning actual MAS clients or customers being 'solicited' or 'enticed' to move business from MAS to Apex." State Court Order at 5. This Court is bound by that dispositive ruling under the doctrine of *res judicata*.[4]

"*Res judicata* bars a party from relitigating a claim that was decided or could have been decided in a prior suit." *Mills v. SunTrust Banks, Inc.*, No. GJH-18-743, 2019 WL 1040492, at *1 (D. Md. Mar. 4, 2019), aff'd, 773 F. App'x 678 (4th Cir. 2019) (citing *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008)). "The doctrine was designed to protect 'litigants

---

[4] MAS asserts that "the state court's opinion was premised upon a fundamental mistake . . . [and] the state court still inexplicably (and incorrectly) held that Equity Mortgage had not provided any discovery." ECF 34-1 at 6; *see also* ECF 39 at 2. This Court does not question the accuracy or reasoning of the state court's opinion. If it believes the state court's decision was erroneous, MAS's remedy is an appeal. *Cf. Powell v. Breslin*, 430 Md. 52, 64, 59 A.3d 531, 538 (2013) ("[E]ven if a ruling in an original suit was found later to be in error, 'the mere fact that the prior ruling is wrong does not deprive it of *res judicata* effect." (quoting *Garrett Park v. Montgomery Cnty. Council*, 257 Md. 250, 256–58 (1970))).

from the burden of relitigating an identical issue with the same party or his privy and to promote judicial economy by preventing needless litigation.'" *Laurel Sand*, 519 F.3d at 161–62 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). The doctrine is generally governed by the law of the state in which the judgment was rendered. *Id.* at 162. In Maryland, the elements of *res judicata* are:

> (1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and, (3) that there has been a final judgment on the merits.

*Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 107 (2005).

For all of MAS's claims, these three elements are easily met. First, Judge Cahill's ruling constituted a valid final judgment on the merits—a point MAS does not challenge in its briefing. *See Mettee v. Boone*, 251 Md. 332, 341 (1968) (summary judgment has preclusive effect); RESTATEMENT (SECOND) OF JUDGMENTS § 19, comment *g* (1980) (summary judgment for the defendant is a valid and final judgment).

Second, all present litigants were parties or were in privity to parties in the state court dispute. MAS is the plaintiff in both cases, and Venick and Apex are defendants in both cases. The only distinction in the present case is that MAS also sued Apex's President, Eric Gates, and Apex's purchaser, Celebrity Home Loans. "In the context of claim preclusion, the term 'privity' refers to 'a person so identified in interest with another that he represents the same legal right.'" *Hall v. St. Mary's Seminary & Univ.*, 608 F. Supp. 2d 679, 685 (D. Md. 2009), *aff'd*, 378 F. App'x 326 (4th Cir. 2010) (citing *FWB Bank v. Richman*, 354 Md. 472, 498, 731 A.2d 916 (1999)). MAS named both additional parties because of their relationship with Apex, and all Defendants would aim to disprove MAS's allegations of conspiracy and joint misconduct together. Further, "[a] corporation and its wholly owned subsidiary are in privity for purposes of *res judicata*." *Mills*, 2019 WL

1040492, at *1 (citing *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 721 (D. Md. 2002)). This is the case for Celebrity Home Loans, which MAS alleges purchased Apex. *See* ECF 10-1 at 8. Thus, all parties in the present litigation were parties or were in privity with parties in the state court dispute.

Third, MAS asserts the same claims arising from the same alleged misconduct in both cases. In assessing the overlapping nature of two sets of claims, the Maryland Supreme Court has adopted the transactional approach. Under this approach, "if the two claims or theories are based upon the same set of facts and one would expect them to be tried together ordinarily, then a party must bring them simultaneously." *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 109 (2005). This is precisely the case here. Both cases rest on an identical set of facts—that on October 29, 2021, Venick suddenly left MAS after decades with the company, began working at its competitor, Apex, and enticed his former customers to do business with Apex by sending out a mass email using his confidential former client list. *Compare* State Court Complaint ¶¶ 10–14, *with* Federal Court Complaint ¶¶ 29–33. Although MAS expands on the events in greater detail and ropes additional actors into the alleged conspiracy in its Federal Court Complaint, MAS's Federal Court Complaint still focuses on the same series of events as those in its State Court Complaint.

MAS argues that its Federal Court Complaint includes separate and additional transactions, namely "the actions of Venick, Gates, and Apex in conspiring and absconding with Equity Mortgage's trade secrets and confidential information" in contrast with the subsequent "purchase of Apex by Celebrity and MidWest Equity that, after the initial tortious actions by Venick and Apex, furthered and multiplied the magnitude of the injury to MAS." ECF 34-1 at 5. This argument is unpersuasive. MAS's claims are based upon "the actions of Venick, Gates, and Apex in conspiring and absconding with Equity Mortgage's trade secrets and confidential information,"

11

not the sale of Apex. Although MAS alleges that the sale somehow magnified the damages it suffered, the sale does not present a new transaction of facts upon which MAS can present new claims—the crux of both complaints addresses Venick's departure and misuse of privileged information.

MAS also asserts that the Federal Court Complaint is broader because it encompasses conduct that occurred throughout 2022 and into the present. *Id.* at 6. But any additional temporal scope is a byproduct of a subsequently filed complaint, not evidence of a distinct transaction of events. "Legal theories may not be divided and presented in piecemeal fashion in order to advance them in separate actions." *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. at 109. MAS cannot refile its case simply because it alleged an ongoing violation and time has passed.

*Res judicata* warrants dismissal of MAS's claims even if MAS devised new legal theories to challenge the same conduct. In its State Court Complaint, MAS only included five counts of state common law violations. In its Federal Court Complaint, MAS crafted eighteen counts of state common law and federal statute violations—not all of which were brought in state court. However, "[o]nce a set of facts has been litigated, *res judicata* generally prevents the application of a different legal theory to that same set of facts, assuming that 'the second theory of liability existed when the first action was litigated.'" *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. at 111 (quoting *Gertz v. Anne Arundel County*, 339 Md. 261, 270 (1995)). All of MAS's claims based on its allegations of Venick improperly leaving and using its confidential information to solicit former clients "arise out of the same set of facts," and therefore "they form 'the basis of the litigative unit or entity which may not be split.'" *Id.* at 112 (quoting *Kent County Bd. of Educ. v. Bilbrough*, 309 Md. 487, 498 (1987); Restatement (Second) of Judgments § 24 cmt. *a* (1982)).

Finally, MAS points to its new allegations regarding Venick's failure to voluntarily disclose his new employer and his continued use of Equity's logo on his social medial platforms. Although MAS did not specifically identify these allegations in its State Court Complaint, these allegations originate from the same series of events and MAS could have brought them in its original action. *See id.* ("All matters which were litigated *or could have been litigated* in the earlier case 'are conclusive in the subsequent proceeding.'" (quoting *Mackall v. Zayre Corp.*, 293 Md. 221, 228 (1982)) (emphasis added)). And under the transactional approach of *res judicata*, the term "transaction" generally refers to a "natural grouping or common nucleus of operative facts." *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999); *see also Hall*, 608 F. Supp. 2d at 686. The relevant factors for determining a "transaction" include facts that "are sufficiently related in time, space, origin and motivation; would have formed a convenient trial unit; and their treatment as a unit would conform to the parties' expectations or business understandings or usage." *White v. Harris*, 23 F. Supp. 2d 611, 616 (D. Md. 1998) (citing Restatement (Second) of Judgments § 24(2) (1982)).

Venick's failure to voluntarily disclose his new employer to MAS occurred at the same time and place as MAS's other allegations. MAS has already brought, and lost, its claims against Venick for improperly leaving its company. Alleging a new fact about this same series of events does not entitle MAS to a second chance at litigating its case. "This proposition derives from 'the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered in adversarial proceedings.'" *Id.* (quoting *Astoria Fed. S.&L. Ass'n v. Solimino*, 501 U.S. 104, 107 (1991)).

The same is true for MAS's allegations of trademark infringement—these claims arise from the same transaction previously challenged, and MAS could have brought them during its

13

state court case. The Facebook posts that incorporate Equity Mortgage's logo are from 2019, when Venick worked for Plaintiff. Therefore, these posts existed when MAS first filed its state court complaint. Further, the screenshot of Venick's professional website was taken on November 23, 2021, *see* Federal Court Complaint ¶ 95, *i.e.*, before MAS filed its State Court Complaint. Again, trademark infringement is an issue that "could have been litigated" in the state court case and derived from the same allegations of inappropriately using MAS's confidential and proprietary information upon leaving the company. Finally, MAS has failed to present any evidence to suggest that Venick's use of Equity Mortgage's company banner on his YouTube channel first occurred at a point when MAS could no longer litigate this issue in state court. In contrast, there is only evidence of a November 8, 2022 screenshot—a time when MAS's state case was still underway.

In short, after bringing its case, litigating, and losing in state court, MAS cannot now emphasize "different shadings of facts" or "different elements of facts" arising from Venick's departure of MAS to engineer "a second bite at the apple." *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. at 111–12. The principle of *res judicata* bars all of MAS's present claims.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motions, ECF 21 and ECF 22, will be **GRANTED** and judgment will be entered in favor of Defendants. A separate Order follows.


Dated: June 28, 2023                                                    /s/
                                                          Stephanie A. Gallagher
                                                          United States District Judge